**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>  Plaintiff, <br><br> v. <br><br> LUZ LOZANO MERCADO, <br><br>  Defendant. | Case No. 19-cr-0424-BAS-1 <br><br> **ORDER GRANTING MOTION TO REDUCE SENTENCE (ECF No. 32)** |

Ms. Luz Lozano Mercado, who has served twenty-six months of her fifty-seven month sentence, requests compassionate release because of the death of her children's caretaker from COVID-19. (ECF No. 32 ("Defendant's Motion").) The Government opposes. (ECF No. 33 ("Government's Opposition").) For the reasons stated below, the Court **GRANTS** the Motion.

**I.  BACKGROUND**

On August 18, 2018, Ms. Lozano Mercado, a Mexican citizen with a border crossing card at the time, attempted to cross the border at a Port of Entry with 18.72 kilograms of methamphetamine and 1.009 kilograms of heroin hidden in her spare tire and gas tank. (Presentence Report ("PSR"), ECF No. 15 at ¶¶ 1–14.) On February 21, 2019, she pled guilty to one count of importation of methamphetamine and one count of importation of heroin and, on August 26, 2019, the Court sentenced her to fifty-seven months in custody,

concurrent on both counts. (*Id.*; ECF Nos. 13, 25.) Ms. Lozano, who is 34 years old, has no prior criminal record, but she faced a higher sentence than others similarly situated in this district because she did not plead guilty until the month before her trial date, and thus, the Government did not recommend a downward departure for "fast track."

At the time she was arrested, Defendant asked to call her sister Estrella Irazoky Mercado to pick up her two minor children, 4 and 11 years old. (PSR ¶ 10.) Although this sister helped care for the children after Defendant's arrest, unfortunately, this sister was also later arrested for drug smuggling on January 28, 2019, and was sentenced to twenty-four months in custody. (No. 19-cr-0656-BAS, ECF No. 34.) Post-arrest, sister Estrella said she was overwhelmed by caring for her siblings, rearing her sister's children, sending money to her sister in custody and paying for her mother's rehabilitation. (No. 19-cr-0656-BAS, ECF No. 24, at ¶ 12.) She said she was unable to sustain this caretaking financially. (*Id.*) At the time of her arrest, Estrella discovered she was pregnant with twins due in September 2019. (*Id.* at ¶ 38.) She planned to have the twins transported to her fiancé and hoped he would care for them while she was in custody. (*Id.*)

At the time Defendant was interviewed for her PSR, she detailed her prior family history: both her father and her stepfather were deceased. (PSR ¶¶ 37, 40.) Her mother was a drug addict who was abusive while Defendant was growing up. (PSR ¶¶ 46, 54.) Defendant's grandmother, who had raised her, had also died. (PSR ¶ 47.) At least one sibling had a mental disorder and needed daily care; before her arrest, Defendant had taken responsibility for this care. (PSR ¶ 43.) At the time of her arrest, Defendant also cared for her 9-year-old niece. (PSR ¶ 52.) Since Defendant was in custody, the children's father, Defendant's common-law husband Jose Chavez-Ramirez, was caring for the two children with the help of Defendant's maternal uncle Saul Mercado-Gonzalez. (PSR ¶¶ 50–51.) Mr. Chavez-Ramirez indicated that Defendant "does not have a lot of support from her family, with the exception of her uncle." (PSR ¶ 54.)

Unfortunately, since her sentence, circumstances have deteriorated for Defendant's children. Because their father "works outside the city," they had been living with their

father's sister, Diana. However, on January 23, 2020, daughter Melanie, now 13 years old, reported to her aunt that her uncle, Diana's husband, had raped and molested her. (ECF No. 32-1, Exh. C.) The children were apparently removed from Diana and her husband, and given to the care of Defendant's aunt, Marisela Mercado-Gonzalez. (*Id.* Exh. B.) On September 9, 2019, Ms. Mercado-Gonzalez died of complications from COVID-19. (*Id.* Exh. A.) The children's father writes that he is relinquishing custody of the two children after the death of Ms. Mercado-Gonzalez because "I am unable to provide a stable home for both my daughters . . . as I work out of town many months." (*Id.* Exh. D.) Defendant represents that she has no alternative but to return the two children to the custody of their aunt Diana. (Defendant's Motion.)

Defendant presents a request for compassionate release that she claims she submitted to the Warden at FCI Dublin, where she is being housed, on October 15, 2020. (ECF No. 32-1, Exhs. E, F.) There is no indication whether the Warden ever responded.

## II. ANALYSIS

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Under the Sentencing Guidelines policy statement, "extraordinary and compelling reasons" may exist upon "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13, Application Notes (1)(C)(i). Although the Sentencing Commission's policy statement regarding "extraordinary and compelling" reasons is outdated and is not binding on the district court, the Court does consider this statement. *See United States v. Brooker*, 976 F.3d 228, 236–37 (2d Cir. 2020).

### A. Exhaustion of Administrative Remedies

A court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt

of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c). In other words, Ms. Lozano Mercado must fully exhaust her administrative remedies from the Warden of the facility where she is being housed before she turns to the Court for relief.

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Ms. Lozano Mercado presents some evidence that in October 2020, she requested compassionate release from the facility where she is being housed. (ECF No. 32-1, Exhs. E, F.) However, there is no indication whether the Warden responded to this request or, if the Warden denied the request, whether Ms. Lozano Mercado appealed the denial.

Nonetheless, the Government may waive the exhaustion requirement by proceeding directly to the substantive issues. *See United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 538 (S.D.N.Y. 2020). The Court finds the Government, in its Response, thus waived any defect in the exhaustion requirement.

**B.      Extraordinary and Compelling Reasons**

As indicated above, the Court may find extraordinary and compelling reasons based on "Family Circumstances," specifically when the caregiver of a Defendant's minor children dies or is incapacitated. U.S.S.G. § 1B1.13, Application Notes (1)(C)(i). Defendant lists a litany of caregivers for her children who have not been successful. Her sister was struggling financially with the care of the children and now has twin infants to care for. Additionally, she was arrested for drug smuggling soon after Defendant. The children's paternal aunt Diana cared for them until the oldest child Melanie accused Diana's husband of molesting and raping her. Defendant's aunt Maricela cared for the children until her death from complications associated with COVID-19. The father of the

children writes that he is relinquishing custody of the children because he works out of town and is unable to find caretakers for them. The Court finds this combination of factors constitutes "extraordinary and compelling" circumstances for Ms. Lozano Mercado's request.

### C. Section 3353(a) Factors

At the time Defendant was sentenced, she received a higher sentence than others in this district because she did not plead guilty until the month before her trial. Nowhere is this disparity more obvious than the sentencing of her sister who received only a 24-month sentence for the same offense. Although the use of "fast track" offers is clearly a valid exercise of discretion and a valid reason for distinguishing between sentences, the Court finds that preventing unwarranted disparities supports Ms. Lozano Mercado's request to be released after serving 26 months of her sentence.

Additionally, at 34 years old, Defendant has no prior criminal offenses. There is no indication that the current sentence will not adequately deter Ms. Lozano Mercado from committing such an offense in the future. Additionally, she has lost her border crossing card, will be deported, and will not be allowed to return to the United States without facing the threat of prosecution and a much higher sentence. Finally, although the amount of drugs being smuggled was large, there is no indication of violence in Ms. Lozano Mercado's past. She admits that she has a problem with alcohol but reports no other illicit substance abuse. Therefore, the Court finds the sentence served adequately protects the public from further crimes.

For all of these reasons, the Court finds the factors under Section 3553(a) support Ms. Lozano Mercado's request for early release.

## III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Reduce her sentence. (ECF No. 32.)[1] The Court reduces Ms. Luz Lozano Mercado's sentence to a time served sentence.

Further, this order is stayed for up to fourteen days, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Defendant's safe release. Defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

**DATED: January 15, 2021**

Hon. Cynthia Bashant
United States District Judge

---

[1] The Court also **GRANTS** Defendant's motion to shorten time. (ECF No. 31.) The Court deems Defendant's motion to reduce sentence as timely filed.